Kelly vs. Estate of Strong.

KELLY, Respondent, vs. ESTATE OF STRONG, Appellant.

*January 13 — February 1, 1887.*

*Agency: Evidence: Estates of decedents.*

The deceased had received $1,500 from the plaintiff, giving her his due-bill therefor, and had afterwards repaid $300, and loaned $1,200 to a company taking its note therefor payable to the plaintiff. Upon the evidence (stated in the opinion) it is *held* that he had no authority as agent of the plaintiff to make such loan on her behalf, and that his estate was liable for the repayment of the $1,200.

APPEAL from the Circuit Court for *Rock* County.

The plaintiff, *Maria A. Kelly*, presented to the county court of Rock county, for allowance against the estate of Henry P. Strong, deceased, a claim for $1,200. She alleged that on October 30, 1882, the said Henry P. Strong had and received from her and to her use, to be repaid to her on demand, the sum of $1,500, and that he then made and delivered to her a paper writing as follows:

" Due *Mrs. Maria A. Kelly* or Mrs. M. Nellie Phillips, the sum of fifteen hundred dollars.

"*Beloit, Wis., Oct. 30, 1882.*        H. P. STRONG."

The plaintiff further alleged that on March 19, 1883, the said H. P. Strong paid to her the sum of $300 to apply on said due-bill, and indorsed the same on said due-bill; that no other payment had been made thereon; that the said M. Nellie Phillips was a daughter of the plaintiff, but had no interest in said money or said due-bill, but that her name was inserted in the due-bill so that if the plaintiff died before the money was repaid, the said Strong might pay the same to the said M. Nellie Phillips; that the said M. Nellie Phillips died before the death of said Strong, and before March 19, 1883, when the payment of $300 was made.

The claim was disallowed by the county court, and the plaintiff appealed to the circuit court. A trial in the latter court, without a jury, resulted in findings and a judgment in favor of the plaintiff. This appeal is on behalf of the estate and from such judgment.

*B. M. Malone* and *A. A. Jackson,* for the appellant.

For the respondent there were separate briefs by *Sale & Pierce* and *A. Taggart,* and the cause was argued orally by *Mr. Pierce.*

COLE, C. J. It was practically admitted on both sides that the instrument presented as evidence of a debt against the estate of Dr. Strong is not a promissory note, for the reason that it is made payable to one or the other of two persons, namely, the claimant or Mrs. Phillips. But the paper is certainly a written acknowledgment of indebtedness on the part of Dr. Strong. The further fact is admitted that Dr. Strong received $1,500 of the claimant; that it was her money, and that he delivered to her the writing on the day it was dated; that Mrs. Phillips, who died before the payment of the $300 indorsed on the writing, had no interest whatever in the money. These facts are conceded, or are so conclusively established by the testimony that they cannot be successfully denied. The only

controverted matter for discussion is the question, For what purpose did Dr. Strong receive this money of the claimant? Did he borrow it of her, or did he receive it to loan for her, or was it intrusted to him for safe-keeping? Unfortunately, the testimony in the case does not furnish satisfactory answers to these questions. It is a probable, if not a necessary, inference from the facts proven, that Dr. Strong did not borrow this money for his own use. If he had done so, the writing given to show the transaction would naturally have been in a different form. Besides, it is quite clearly shown that Dr. Strong was in no need of money in October, 1882; that he had during that month, and before, and for some time after, a considerable sum standing to his credit in the bank where he kept his bank account; and that he certainly did not deposit any such sum to his own credit at or near that time. In view of these indisputable facts, we are forced to the conclusion that Dr. Strong either received the $1,500 of the claimant for safe-keeping, or some undisclosed purpose, or that it was given him to loan for the claimant when an opportunity offered. Certain it is that on the 19th of March, 1883, he paid $300 to apply on the instrument. Both the indorsement and due-bill are in his own handwriting. It further appears that on the 16th day of April, 1883, he loaned to the Rock River Paper Company $1,200, and took from the company a note therefor, payable to the order of the claimant, one day after date, with interest at eight per cent. per annum. The payment of this note was guarantied by Mr. Cobb, the treasurer of the company. He and the company were at the time in good financial standing, and were regarded as solvent and responsible. It turned out, however, that this was not the case, and that the loan was a bad one.

The learned circuit court found that, at the time Dr. Strong loaned the money to the paper company, he was not

the agent of the claimant to make it, and that he had no power, right, or authority to make such a loan for or on her behalf, and that she had no knowledge of it and never ratified it. The case turns upon the correctness of this finding. The learned counsel for the estate claim that it is erroneous, contrary to the weight of evidence and of all the reasonable inferences to be drawn from it. They insist that it is clearly proven that Dr. Strong, when he received the $1,500, and when he subsequently made the loan to the paper company, was the agent of the claimant and authorized to bind her by his acts in that matter. It is said that it sufficiently appears, and that the fact was, that he was her general agent during all this time; that he had charge of and attended to all her business; and that it is a fair presumption from the facts shown that the loan was made with her authority or understanding. Mr. Malone testified that, in an interview which he had with the claimant after the death of Dr. Strong, she desired him to take the place of the doctor as her agent and legal adviser, and stated in the conversation " that Dr. Strong had been her agent, and had attended to and done all her business for her; . . . that for some time the doctor had acted as her agent, and had entire charge of all her matters." This is the most direct and positive evidence as to the extent of the agency, and it is founded on admissions, which are proverbially of a weak and unreliable nature. The claimant herself contradicts this testimony, and says she made no such statement. And there is some other evidence which tends to prove that Dr. Strong did not attend to all of her business — which was not large or important,— though he did undoubtedly rent a farm for her, collected some rents, aided her in the transaction of her business, took charge of her will and some other papers. But it does not appear that he ever made any other loan for her.

An argument is attempted to be drawn, in support of the

position that the loan was authorized, from the character of the agency. It is said it was a general agency as distinguished from a special agency, and therefore we must presume that it included the power to make the loan. There is considerable doubt about the evidence showing that it was a general agency. But, assuming for the moment that that fact was fully established, it does not materially aid the case of the estate. The books make a distinction between a general and special agency. Mr. Justice Story says: " The distinction commonly taken between the case of a general agent and that of a special agent, the former being appointed to act in his principal's affairs generally, and the latter to act concerning some particular object. In the former case, the principal will be bound by the acts of his agent within the scope of the general authority conferred on him, although he violates by those acts his private instructions and directions which are given to him by the principal, limiting, qualifying, suspending, or prohibiting the exercise of such authority under particular circumstances. In the latter case, if the agent exceeds the special and limited authority conferred on him, the principal is not bound by his acts, but they become mere nullities so far as he is concerned; unless, indeed, he has held him out as possessing a more enlarged authority." Story, Ag. § 126. Many authorities might be cited which make the same distinction, but it is unnecessary.

This rule of law is founded on public policy, and it is for the protection of innocent third parties. It has no direct bearing upon a case arising between the principal and agent. There the fundamental inquiry is, What did the principal authorize the agent to do, for he is only bound by acts which he authorized. Consequently, if the agent exceeds his powers, makes a contract on behalf of his principal which he had no authority to make, the principal is not bound. These propositions are elementary, but it would

be unprofitable to continue the discussion of them in this case.

The question here is, Had Dr. Strong authority to make this loan? The *onus* was upon the estate to show that he had such authority. There is no direct or satisfactory proof, according to our understanding of the evidence, that he had. There are probabilities and circumstances of more or less weight which tend to support the view that he would not have made the loan without some authority; but we cannot say they are sufficiently cogent to establish the fact. It is said it is contrary to the usual conduct of prudent persons to leave money with an agent merely for safe-keeping, but that they generally direct the agent to invest the funds so as to produce some income. That may be the usual course of business; but, undisputably, funds are often left with agents for safe-keeping and no other purpose. In this case Dr. Strong held most of the money from October 30, 1882, to April 16, 1883, without investing it; and during this time he did not take up the writing, which surely amounts to a deliberate acknowledgment of indebtedness on his part. In view of these facts, the presumption is as strong that he held the money for safe-keeping, or for some purpose which the testimony does not disclose, as that he received it as an agent to loan for the claimant. Dr. Strong is dead, and the mouth of the claimant is closed as to her object in intrusting the money with him. If, upon the evidence as presented, we should affirm that the purpose and object were to have the doctor loan the money, we should pass from the safe ground of legal proof into the uncertain domain of conjecture and speculation.

Our conclusion therefore is that the sixth finding of the circuit court cannot be disturbed, and that the judgment must be affirmed. The costs of the respondent must be paid out of the estate.

*By the Court.*— Ordered accordingly.